STATE OF MARYLAND *v.* THOMAS LEONARD RAITHEL

[No. 56, September Term, 1978.]

*Decided July 20, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE and COLE, JJ.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*Victoria A. Salner, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The single question before the Court is whether a trial court's use of an accused's silence at a prior suppression hearing to impeach his credibility when the defendant subsequently testifies at a second suppression hearing is permissible.

On July 5, 1974, a female patron was found stabbed outside a restroom in a restaurant in Prince George's County, Maryland. Although the actual stabbing was unwitnessed, the defendant Thomas Leonard Raithel became the prime suspect based on circumstantial evidence. At the request of the police, the defendant, accompanied by his father, visited the police station in an effort to clear up any suspicion. A confession was obtained from defendant at that time, and subsequently he was charged with murder, assault with intent to rape, and carrying a dangerous and deadly weapon openly with intent to injure. The defendant pled not guilty, not guilty by reason of insanity, and he challenged his competency to stand trial. During the trial in the Circuit Court for Prince George's County the defendant objected to the State's attempted introduction of his confession on the ground that it was involuntary, and a suppression hearing was held outside of the jury's presence. Apparently on the advice of counsel the defendant did not testify at the suppression hearing. The judge ruled that the confession was admissible, and later the jury found the defendant sane and guilty of murder, assault with intent to rape and carrying a dangerous and deadly weapon with intent to injure. He was sentenced to two life terms for the convictions of murder and assault with intent to rape, and a three year term for carrying

a dangerous and deadly weapon with intent to injure, the sentences to be served consecutively.

The Court of Special Appeals affirmed, but this Court reversed and remanded the case for a new trial, holding that the trial court had failed to properly resolve the issue of Raithel's competency to stand trial. *Raithel v. State,* 280 Md. 291, 372 A. 2d 1069 (1977).

On retrial Raithel, represented by new counsel, abandoned the issue of his competency to stand trial but continued to maintain that he was not guilty and not guilty by reason of insanity. During the course of the second trial, the State again offered into evidence the defendant's alleged confession. Raithel again objected on the ground that the statements were not voluntary. Upon the defendant's motion to suppress the confession, a hearing was again held out of the jury's presence. Since the trial judge had also presided in the first trial and remembered the testimony, he suggested that the motion be decided on the basis of the previous testimony along with any additional testimony the parties wished to present, and this procedure was agreeable to counsel for both sides.

At the suppression hearing the prior testimony of two police officers was introduced. The policemen's version of what happened was as follows. Raithel, upon the officers' suggestion, voluntarily went to the police station accompanied by his father. The officers suggested to the defendant's father that a polygraph examination would be the best means of resolving any suspicion, and, after discussing the matter with his father, Raithel agreed to take the test. He was given *Miranda* warnings (*Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966)), although he was also informed that he was free to leave at any time. Raithel was connected to the polygraph machine, was asked some preliminary questions, and then stated that he did not want to take the test. One of the police officers suggested to Raithel that he could not take the test because he had committed the crime. The officer went on to suggest that the killing had been accidental, and Raithel agreed that the killing was in fact accidental. Then, the policeman told Raithel he did

not believe him, and Raithel admitted how the killing actually occurred. According to the police officers, his statements were made without any threats, inducements, or coercion.

At the second suppression hearing, the defendant, for the first time, testified in support of his motion and gave a different version of what happened than the police officers. Raithel testified that his father had urged him to take the polygraph test and that he only initially consented because he "couldn't refuse [his] father." According to Raithel, after he was disconnected from the polygraph machine he tried to leave the room, but the police officer told him that he was not free to leave the building because the officer knew Raithel was guilty. Raithel claimed that he then asked to see his father but was told that his father had left the station to get something to eat. Raithel testified that when he attempted to leave the room to wait outside for his father, the police officer stood up in a threatening manner and told him to sit down. He finally confessed after several hours of interrogation.[1]

In ruling on the voluntariness of the confession, and, in that connection, in determining the credibility of the witnesses, the trial judge relied on the failure of the defendant and his father to take the stand and offer their testimony at the first suppression hearing. The judge stated that their failure to testify at the first suppression hearing "frankly . . . does have some bearing on the credibility issue to the court." Defense counsel responded by stating that he could not speak for what Raithel's attorney had done at the prior hearing, that he did not have the benefit of the earlier lawyer's thoughts, and that "counsel made tactical decisions for all kinds of reasons." The trial judge, although saying that he understood what defense counsel was arguing, reiterated that the failure of the defendant and his father to testify at the prior suppression hearing "does have some bearing on the court's mental process." The trial judge went on to note that if the defendant's testimony were to be believed, "probably the

---

1. Also testifying at the second suppression hearing for the first time, Raithel's father stated that he had taken his son to the police station at about 7:00 p.m., that he did not leave the station at any time, and that at 2:00-3:00 in the morning the police told him that his son had confessed.

State hasn't met the burden of" showing voluntariness by a preponderance of the evidence. The trial judge subsequently found the confession to be voluntary and admitted it into evidence.

Raithel was again found guilty by the jury on all three charges. The convictions for assault with intent to rape and for murder were merged, and Raithel was sentenced to one term of life imprisonment. He was also sentenced to three years' imprisonment for carrying a dangerous and deadly weapon. The terms were to be served consecutively.

Upon appeal, the Court of Special Appeals reversed and remanded for a new trial, *Raithel v. State,* 40 Md. App. 107, 388 A. 2d 161 (1978). The court held that the privilege against self-incrimination prevents an accused's silence at a prior hearing from being considered in assessing his credibility. The Court of Special Appeals also rejected the State's argument that the defendant had not preserved this issue for appellate review.

The State filed a petition for a writ of certiorari raising two questions: 1. whether the Court of Special Appeals erred in holding that the issue concerning the defendant's silence was properly preserved for appellate review; 2. assuming that the issue was properly before the Court of Special Appeals, whether that court erred in holding that the trial judge at the second suppression hearing improperly relied upon the defendant's prior silence. We granted certiorari limited to the second question; consequently, the merits of the trial court's action is the only matter before us. Maryland Rule 813 a. We agree with the Court of Special Appeals that it was impermissible for the trial court to use the defendant's silence at the first suppression hearing against him when assessing his credibility at the second suppression hearing, although we rest our decision on somewhat different reasoning than adopted by the Court of Special Appeals.

In arriving at its conclusion, the Court of Special Appeals appeared to proceed upon the unstated assumption that, absent a constitutional bar, the defendant's prior silence could as a matter of Maryland criminal evidence law be used to impeach his credibility as a prior inconsistent statement. The

Court of Special Appeals began its discussion by stating: "The constitutional question to be decided is whether an accused who testifies waives his right not to be cross-examined as to his silence in a prior proceeding." 40 Md. App. at 113. The court then discussed *Raffel v. United States,* 271 U. S. 494, 46 S. Ct. 566, 70 L. Ed. 1054 (1926), involving a situation where an accused did not testify at his first trial despite accusations made by a government agent, but did testify at his second trial, and the Supreme Court held that the Fifth Amendment did not preclude cross-examination of the defendant at the second trial concerning his prior silence. The Supreme Court's reasoning in *Raffel* was that the defendant, by testifying at the second trial, completely waived his privilege against self-incrimination. After discussing *Raffel v. United States, supra,* the Court of Special Appeals in the instant case went on to consider several more recent Supreme Court cases which, according to the Court of Special Appeals, left *Raffel's* "present validity . . . a matter of considerable doubt." 40 Md. App. at 114. Those cases are *Doyle v. Ohio,* 426 U. S. 610, 96 S. Ct. 2240, 49 L.Ed.2d 91 (1976); *Griffin v. California,* 380 U. S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106 (1965); *Grunewald v. United States,* 353 U. S. 391, 77 S. Ct. 963, 1 L.Ed.2d 931 (1957); *Johnson v. United States,* 318 U. S. 189, 63 S. Ct. 549, 87 L. Ed. 704 (1943). *See also Younie v. State,* 272 Md. 233, 322 A. 2d 211 (1974). The Court of Special Appeals concluded that *Johnson, Grunewald* and *Doyle* had impliedly overruled *Raffel,* "and that the privilege against self-incrimination prevents an accused's silence at a prior hearing from being considered in assessing his credibility." 40 Md. App. at 117.

The State, in attacking the Court of Special Appeals' holding, simply asserts (without citing any Maryland evidence cases or similar cases from our sister states) that the defendant's "silence at the first hearing was a tacit acknowledgment of the truth of the testimony of the police officers" and thus "the trial court employed a valid evidentiary technique — impeachment by prior inconsistent statements or conduct." The State's entire argument then focuses upon the Fifth Amendment privilege against self-incrimination.

However, nothing is better settled than the principle that courts should not decide constitutional issues unnecessarily. In the instant case, the Fifth Amendment issue only arises if the defendant's silence at the first suppression hearing was proper impeaching evidence as a matter of Maryland evidence law. In our view, under the circumstances of this case, the defendant's silence should not have been considered by the trial court regardless of any Fifth Amendment considerations. Consequently, we resolve the question presented in this case on that non-constitutional ground, and we do not reach any of the constitutional issues dealt with by the Court of Special Appeals and the State in its argument.

Although silence in the face of an accusation or incriminatory statement by someone else is sometimes admissible as a matter of evidence law, either as substantive evidence or for impeachment purposes, it is not always admissible. *See, e.g., Miller v. State,* 231 Md. 215, 218-219, 189 A. 2d 635 (1963); *Secor, Adm'r v. Brown,* 221 Md. 119, 123, 156 A. 2d 225 (1959); *Zink v. Zink,* 215 Md. 197, 202-203, 137 A. 2d 139 (1957); *Barber v. State,* 191 Md. 555, 565-566, 62 A. 2d 616 (1948); McCormick, *Evidence* § 161, p. 353 (1972 ed.). *Cf. Younie v. State, supra,* 272 Md. at 244-245 (dealing primarily with the constitutional aspects of the matter, although recognizing the general rule of evidence).

One circumstance where a criminal defendant's silence, upon hearing a statement which one might otherwise be expected to deny, is generally held inadmissible, is after one is arrested for a crime. See the discussion of this principle in *Barber v. State, supra,* 191 Md. at 565. This rule, known as the "Massachusetts rule," was explained in *Commonwealth v. McDermott,* 123 Mass. 440, 441 (1877), holding that since one has "a right to keep silence as to the crime with which he was charged, and all circumstances connected with it, and was not called upon to reply to or contradict any statements made in his hearing," therefore "[n]o inference against him was warranted by his failure to deny the truth" of an accusation made in his presence. As pointed out in McCormick, *supra,* p. 353, while "there is some suggestion that this is based upon Fifth Amendment considerations, most

courts have reached this result by reasoning that such accusations, in view of the circumstances, do not naturally call for denial and therefore the failure to deny lacks probative value."

In *Miller v. State, supra,* this Court applied the Massachusetts rule and reversed a criminal conviction where the trial judge had allowed into evidence the fact of the defendant's silence in the face of a post-arrest accusation in a police station by someone else suspected of also participating in the same crime. In *Miller,* the Court relied upon and quoted from *People v. Rutigliano,* 261 N. Y. 103, 184 N. E. 689 (1933). In *Rutigliano,* the Court of Appeals of New York set forth the reason for this rule of evidence as follows (184 N. E. at 690):

> "He is then under no duty to speak and his silence should not be counted as giving assent to what he hears. If he had counsel, he would doubtless be advised not to talk. If he had not, he should not be prejudiced thereby."

The reasoning in *Rutigliano* would seem to be even more pertinent in a case like the present one, where the defendant's silence was apparently upon counsel's advice, as a result of a tactical decision by counsel. This was pointed to in *Barber v. State, supra,* 191 Md. at 565-566:

> "In the case at bar we think that the refusal of the accused to deny the charge of ownership cannot be treated as acquiescence, for he had been told by the police, as well as by his own attorney, that he had 'a perfect right' to decline to make any statement. Under the circumstances, we think the court erred in declining to strike out the testimony of Officer Rudy as to what Holmes said about the ownership of the trousers, in Barber's presence, not because it was hearsay, but because it would not support an inference of admission of guilt under the circumstances."

One aspect of this principle which appears to be even more

strictly adhered to by the courts is that post-arrest silence, in the face of an accusation made in the course of any type of judicial proceeding, is not admissible as evidence. As the Supreme Court of Tennessee stated in *Jones v. State,* 184 Tenn. 128, 196 S.W.2d 491, 492 (1946), such evidence is inadmissible for *any* purpose:

> "Evidence of a failure of defendant to deny a charge made against him in the course of a judicial proceeding is not admissible for any purpose."

And in *Commonwealth v. Zorambo,* 205 Pa. 109, 54 A. 716, 717 (1903), the Supreme Court of Pennsylvania emphasized that at a judicial proceeding, an accused

> "may hold his peace in the face of any accusation against him, and his silence cannot be regarded as any, not even the slightest, evidence of his guilt."

A judicial proceeding is one circumstance where a criminal defendant "would not be expected to reply," *Diamond v. State,* 195 Ind. 285, 144 N. E. 466, 468 (1924). *See also State v. Bates,* 140 Conn. 326, 99 A. 2d 133, .135 (1953); *Pickens v. State,* 111 Ga. App. 574, 142 S.E.2d 427, 428 (1965).

It is noteworthy that the above-discussed principles of the law of evidence, and not any federal constitutional provisions, formed the bases for the Supreme Court's holdings in *United States v. Hale,* 422 U. S. 171, 95 S. Ct. 2133, 45 L.Ed.2d 99 (1975), and *Grunewald v. United States, supra,* 353 U. S. at 415-424, refusing to permit the accuseds' post-arrest silence, in the face of accusations, to be used to impeach their credibility. Thus, in *Hale* Mr. Justice Marshall stated for the Court (422 U. S. at 176):

> "In most circumstances silence is so ambiguous that it is of little probative force. For example, silence is commonly thought to lack probative value on the question of whether a person has expressed tacit agreement or disagreement with contemporaneous statements of others. See 4 Wigmore § 1071. Silence gains more probative weight where it persists in the face of accusation,

since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation. Failure to contest an assertion, however, is considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question. 3A Wigmore § 1042. . . . [A]n arrestee . . . is under no duty to speak and, as in this case, has ordinarily been advised by government authorities only moments earlier that he has a right to remain silent, and that anything he does say can and will be used against him in court."

Turning to the present case, the defendant Raithel's silence in the face of the police officers' statements occurred after he was arrested and at a judicial proceeding, namely a suppression hearing during his trial. He had every right to remain silent. His lawyer was present and apparently advised him to remain silent. Under these circumstances, no inferences can be drawn from his failure to testify. Thus, when he testified at the second suppression hearing, his earlier silence did not constitute a prior inconsistent statement and could not be properly relied on by the trial court to impeach his credibility. We base this conclusion on settled principles of the law of evidence, regardless of whether there also was a violation of the Fifth Amendment.

*Judgment affirmed.*
*Costs to be paid by Prince George's*
*County.*