695 A.2d 158

**PROFESSIONAL STAFF NURSES ASSOCIATION**

v.

**DIMENSIONS HEALTH CORPORATION et al.**

No. 83, Sept. Term, 1996.

Court of Appeals of Maryland.

June 18, 1997.

---

Marley S. Weiss, Baltimore (Douglas Taylor, Martin Hogan, Gromfine and Taylor, P.C., Alexandria, VA), all on brief, for Petitioner.

Stephen D. Shawe (Gary L. Simpler, Elizabeth Torphy–Donzella, Baltimore; Joseph B. Chazen, Meyers, Billingsly, Rosenbaum & Rodbell, P.A., Riverdale), all on brief, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RODOWSKY, Judge.

We granted certiorari in this case to decide whether the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151

through 160 (1994), preempted the Maryland anti-strikebreakers statute, Maryland Code (1991), § 4–403 of the Labor and Employment Article (LE). The Court of Special Appeals held that the Maryland statute was preempted. *Professional Staff Nurses Ass'n v. Dimensions Health Corp.*, 110 Md.App. 270, 677 A.2d 87 (1996). We conclude that the constitutional issue should not have been reached.

The petitioner, Professional Staff Nurses Association (the Association), filed a complaint in the Circuit Court for Prince George's County against the respondent, Favorite Nurses, Inc. (Favorite), in which four other organizations were also named as defendants. In its complaint the Association described itself as an unincorporated labor organization, representing employees in the nursing industry throughout Maryland. These included approximately 700 registered nurses working at four health care facilities in Prince George's County, all four of which were owned by the other respondent in this Court, Dimensions Health Corporation (DHC). The single count complaint alleged that Favorite had maliciously interfered with an advantageous economic relationship that the Association had with DHC.

The complaint was filed on April 11, 1995. Before writs of summons were prepared for the defendants, Favorite, on April 13, 1995, voluntarily appeared in the action and moved to dismiss the complaint for failure to state a claim upon which relief could be granted. At the same time DHC moved to intervene as a defendant, and it anticipatorily joined in the motion to dismiss. Intervention was allowed by the circuit court. Process was never issued against the defendants originally named in the complaint, and none of those defendants, other than Favorite, appeared in the action.

The circuit court granted the respondents' motion to dismiss. Consequently, our statement of facts is limited to the allegations of the complaint. Since 1986 the Association, as representative of the 700 registered nurses (RNs) working at DHC's four health care facilities in Prince George's County, had entered into collective bargaining agreements with DHC.

A contract that was to expire on November 30, 1993, had been extended to November 30, 1994. Negotiations for a new contract, however, had broken down in the fall of 1994, and on December 14, 1994, the Association had sent to DHC the ten-day notice of a strike against a health care facility required by 29 U.S.C. § 158(g). On the tenth day of the notice period, during a federal mediation, the Association and DHC agreed to extend the expiration of their collective bargaining agreement to February 28, 1995. When the latter date arrived, DHC "agreed not to take any unilateral action concerning the contractual wages, hours, and other terms and conditions of employment until March 10, 1995." Complaint, ¶ 6. DHC notified the Association on March 10 that DHC would no longer deduct union dues, but the parties continued to negotiate. Then, on April 4, the Association notified DHC that its 700 registered nurse members would begin their strike and picketing on April 14, 1995.

Paragraph 12 of the complaint, in relevant part, alleges that Favorite "has provided and does provide replacement RNs for striking RNs during strikes at health care facilities located in the State of Maryland (including the four facilities owned and operated by DHC . . . ) and other states."

Paragraph 17 of the complaint avers:

"At all times mentioned herein, including, but not limited to the two ten (10) day strike notice periods (from December 14 to December 24, 1994, and from April 4 to April 14, 1995), Defendant[ ] . . . Favorite . . . ha[s] intentionally and without legal justification interfered with the continuing economic/business relationship between Plaintiff [Association] and DHC by providing, obtaining, recruiting, or referring for employment *in the place of the striking 700 RN [Association] members,* individuals (i.e., RN strikebreakers) who customarily and repeatedly offer to be employed in the place of striking RNs."

(Emphasis added).

The language of ¶ 17 tracks the language of the Maryland anti-strikebreakers statute, LE § 4–403. That statute in relevant part reads:

"(a) *Recruitment restricted.*—A person who is not directly interested in a strike may not provide, obtain, recruit, or refer, for employment in place of a striker, an individual who customarily and repeatedly offers to be employed in place of strikers.

. . . .

"(c) *Penalty.*—A person who violates any provision of this section is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000 or imprisonment not exceeding 3 years or both."

Inasmuch as there was no contract between the Association and DHC, the complaint necessarily seeks to plead that version of the tort that remedies "wrongfully interfering with economic relationships." *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 69, 485 A.2d 663, 674 (1984). "To establish tortious interference with prospective contractual relations, it is necessary to prove both a tortious intent and improper or wrongful conduct." *Macklin v. Robert Logan Assocs.,* 334 Md. 287, 301, 639 A.2d 112, 119 (1994). One way in which to prove wrongful conduct is to show that the defendant "violated the criminal law." *Id.* The respondents have consistently argued, *inter alia,* that, in an attempt to satisfy the tort's elements, the complaint relies on Favorite's alleged violation of LE § 4–403(a). Thus, if a violation of § 4–403 is the only improper conduct by Favorite alleged in the complaint, and if § 4–403 is unconstitutional because it conflicts with the NLRA and thereby violates the Supremacy Clause of the United States Constitution, Favorite has not tortiously interfered with the relationship between the Association and DHC.

The circuit court in a written opinion granted the motion to dismiss on two grounds. Finding persuasive a line of cases led by *Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), the trial court concluded that Congress intended "that certain economic self help measures not be regulated" and that the intent "encompasses [DHC's] hiring

replacement nurses from temporary nursing service agencies...."

The circuit court also held that, even if § 4–403(a) were not preempted, the Association had failed sufficiently to plead a cause of action. The circuit court quoted from *Natural Design* the following elements of the broader form of the tort:

"(1) [I]ntentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting."

*Natural Design,* 302 Md. at 71, 485 A.2d at 675 (interior quotations omitted). With respect to the first two elements listed above, the circuit court held that "[i]t is impossible for [the Association] to proffer that Favorite willfully and intentionally interfered with [the Association's] and [DHC's] economic and business relations." Further, there were "no allegations of an unlawful purpose" in the view of the circuit court. Finally, the court did not reach the damages element "because the factual predicate, the strike, has not taken place." Nevertheless, the court observed that substantial damages would be "problematical at best." This was because "loss due to the current lack ... of a collective bargaining agreement ... cannot be assigned to Favorite...."

The Association appealed to the Court of Special Appeals. As that court read the complaint, "[t]he conduct at issue ... is Favorite's 'providing, obtaining, recruiting, or referring for employment in the place of the striking 700 RN [Association] members, individuals (i.e., RN strikebreakers) who customarily and repeatedly offer to be employed in the place of striking RN's.'" *Professional Staff Nurses Ass'n,* 110 Md.App. at 287, 677 A.2d at 95. These allegations described a violation of LE § 4–403, said the court, and "satisfied the unlawful or improper conduct element of the tort claim." *Id.* at 291, 677 A.2d at 97. The Court of Special Appeals, based on the foregoing determination, concluded that it was "compelled to address the

question of federal preemption," *id.,* and the court held that the Maryland statute was preempted. The Court of Special Appeals noted the alternative ground of decision by the circuit court, *id.* at 275, 677 A.2d at 89, but the opinion of the intermediate appellate court does not discuss that non-constitutional ground of decision.

We granted the Association's petition for certiorari. The petition raises the single issue of preemption and relies only on violation of the anti-strikebreakers statute for the improper conduct element of the interference tort.[1]

Oral argument in this Court took place almost two full years after April 14, 1995, the date on which the Association gave notice that the strike would start. We were advised at argument by counsel for the Association that no strike has ever taken place and that the members of the Association have continuously worked at DHC without a contract. Thus, nurses furnished by or through Favorite have not replaced striking nurses at the DHC facilities.

I

■ We first address whether, assuming the constitutionality of LE § 4–403(a), the Association has stated a cause of action under Maryland non-constitutional tort law. "[T]his Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground." *State v. Lancaster,* 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993) (citing numerous cases). The appellate policy of avoiding

---

1. The question presented for certiorari review by the Association reads as follows:

"Whether the Court of Special Appeals Erred in Holding that the Tortious Interference Claim Against Favorite ... Is Preempted by Machinists NLRA Preemption Where [Favorite] Is Not in an Employer–Employee or Employer–Union Relationship with either [the Association] or DHC, and Where the Narrow Regulatory Range of the Tort and the Strikebreaker Act as to [Favorite] Place the Claim Squarely within Preemption Exceptions for Matters Deeply Rooted in Local Feeling and Responsibility and for Matters of only Peripheral Concern to the Federal Labor Relations Scheme?"

unnecessary decision of constitutional issues gives rise to one of "a very limited number of circumstances [that] have been treated as 'extraordinary' and thus within the exceptions to the requirement that an issue be raised in a certiorari petition, cross-petition, or order by the Court." *State v. Broberg*, 342 Md. 544, 573, 677 A.2d 602, 616 (1996) (Eldridge, J., dissenting with Murphy, C.J. and Bell, J.).

*State v. Raithel*, 285 Md. 478, 404 A.2d 264 (1979), illustrates the exception. The issue presented was whether an accused's silence at a prior suppression hearing could be used to impeach the accused's credibility at a second suppression hearing. The Court of Special Appeals had held that the constitutional privilege against self-incrimination prevented use of the accused's silence. *Raithel v. State*, 40 Md.App. 107, 388 A.2d 161 (1978). In granting the state's petition for certiorari, this Court excluded an issue concerning preservation, thereby limiting certiorari review to the merits of the trial court's action. 285 Md. at 482, 404 A.2d at 266. "The State's entire argument [focused] upon the Fifth Amendment privilege against self-incrimination." *Id.* at 483, 404 A.2d at 267. This Court nevertheless decided the case on non-constitutional grounds, under the Maryland law of evidence. We said:

"[N]othing is better settled than the principle that courts should not decide constitutional issues unnecessarily. In the instant case, the Fifth Amendment issue only arises if the defendant's silence at the first suppression hearing was proper impeaching evidence as a matter of Maryland evidence law. In our view, under the circumstances of this case, the defendant's silence should not have been considered by the trial court regardless of any Fifth Amendment considerations. Consequently, we resolve the question presented in this case on that non-constitutional ground, and we do not reach any of the constitutional issues dealt with by the Court of Special Appeals and the State in its argument."

*Id.* at 484, 404 A.2d at 267.

To the same effect is *Insurance Comm'r v. Equitable Life Assurance Soc'y of the United States*, 339 Md. 596, 664 A.2d

862 (1995). Before the administrative agency and on judicial review by a circuit court and by this Court the parties had argued whether certain statutes authorizing differentials in insurance rates based on gender, if actuarially justified, were violative of the Equal Rights Amendment to the Maryland Declaration of Rights. We held that the statutes on which the parties had focused were inapplicable, and we remanded to the agency without deciding the constitutional issues. *Id.* at 635, 664 A.2d at 881–82.

## II

The complaint alleges that Favorite provided strikebreakers "in the place of the striking 700 RN [Association] members . . . .," but we are now told that there was no strike and there were no "strikebreakers" who replaced striking DHC nurses.[2] If we read the present participle, "striking," to indicate present time, then the Association bases its claim upon a state of facts that has not accrued, thereby raising justiciability concerns. " 'A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded.' " *Reyes v. Prince George's County,* 281 Md. 279, 288, 380 A.2d 12, 17 (1977). "To be justiciable the issue must present more than a mere difference of opinion." *Hatt v. Anderson,* 297 Md. 42, 46, 464 A.2d 1076, 1078 (1983). "Indeed, the addressing of non-justiciable issues would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State." *Id. See also Hamilton v. McAuliffe,* 277 Md. 336, 353 A.2d 634 (1976).

Were we to interpret the Association's complaint to allege that Favorite's tortious interference was the actual replacement of striking nurses at DHC facilities, the case would not

---

**2.** Apparently counsel who signed the complaint and filed it on April 11, 1995, anticipated that the strike would take effect at the expiration of the second notice period on April 14, 1995. The complaint was signed by counsel other than those who later appeared for the Association in the circuit and appellate courts.

be ripe for adjudication and the ordinary disposition of the case would be dismissal. *See Hatt,* 297 Md. at 47, 464 A.2d at 1079 (trial court judgment vacated and case remanded with instructions to dismiss for a lack of a justiciable issue).

■ At oral argument the Association submitted that the complaint should not be construed so narrowly, and the Association alternatively asked for a remand for the purpose of permitting amendment to the complaint.[3] In the statement of facts section of its brief to this Court, the Association, referring to ¶¶ 12 and 17 of its complaint, construes those paragraphs to allege the following: "[Favorite] had offered to contract with DHC on the basis that it would recruit and provide professional strikebreaker, temporary nurses for DHC at times when a strike by [Association]-represented registered nurses was threatened or in progress." Brief for Appellant PSNA at 10. In the instant matter, whether we construe the complaint to conform to the Association's statement of facts in its brief, or whether we consider that statement as a proffer of the amendment that would be made on remand, the result is the same. As explained in Part III, *infra,* an allegation that Favorite offered to contract to provide professional strikebreakers when a strike was threatened does not state a cause of action for malicious interference with an advantageous economic relationship.

### III

■ It is clear that LE § 4–403(a) does not make wrongful the conduct attributed to Favorite in the Association's statement of facts. Accepting as true for purposes of the motion to dismiss the Association's allegation that nurses provided by Favorite are professional strikebreakers, Favorite could "not provide, obtain, recruit, or refer [those nurses] for employment in place of a striker" when there has been no strike. In

---

3. This Court may remand a case to a lower court if it "concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings." Maryland Rule 8–604(d)(1).

order for § 4-403(a) to make wrongful Favorite's offer to provide nurses in anticipation of a strike, one would be required to read the statute as if it said that a person who was not directly interested in a *threatened strike* was prohibited from referring workers for *potential* employment in place of *possible* strikers. But violation of § 4-403(a) is a criminal offense punishable by imprisonment not exceeding three years and by a fine not exceeding $1,000. LE § 4-403(c). A criminal statute may not be read so expansively. To do so violates the fundamental rule that criminal statutes must be strictly construed. *See Gardner v. State,* 344 Md. 642, 651–52, 689 A.2d 610, 614–15 (1997); *Tapscott v. State,* 343 Md. 650, 654, 684 A.2d 439, 441 (1996); *Jones v. State,* 336 Md. 255, 260–61, 647 A.2d 1204, 1206–07 (1994); *Gargliano v. State,* 334 Md. 428, 435–36, 639 A.2d 675, 678–79 (1994).

Although the Association protests that its theory of the case is not limited to wrongful conduct by Favorite based on a violation of LE § 4-403(a), we are unable to find any alternative theory alleged in the complaint. Neither could the Court of Special Appeals. 110 Md.App. at 290, 677 A.2d at 97 ("Additionally, there is no allegation that Favorite engaged in an activity otherwise lawful in a manner that made it unlawful, *e.g.,* threatening or causing violence."). Nor did the circuit court find any such allegation. In addition, the question presented on certiorari rests the tort exclusively on a violation of LE § 4-403(a).

In addition, it would not be in the interest of justice to remand for further amendment in the instant matter. When pressed to explain in what way the Association had been damaged by conduct on the part of Favorite, counsel for the Association advised that the Association's dues had declined because of the absence of a check-off. From the standpoint of proximate causation, the reduction in the Association's dues income cannot be attributed to Favorite. The reduction results from the expiration of the collective bargaining agreement between the Association and DHC. DHC's having discontinued deducting union dues from its nurses' wages following expiration of the collective bargaining agreement is

not wrongful, even if it were in part motivated by the knowledge that Favorite offered to contract to furnish alleged "professional strikebreakers."

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER, PROFESSIONAL STAFF NURSES ASSOCIATION.**