EWELL *v.* STATE

[No. 175, September Term, 1961.]

*Decided May 18, 1962.*

The cause was argued on January 10, 1962, before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

The cause was reargued on April 9, 1962, before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Fred Kolodner,* with whom was *William G. Kolodner* on the brief, for appellant.

*Robert S. Bourbon, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney,* and *E. Thomas Maxwell, Assistant State's Attorney,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

When the jury trial of the defendant, Ewell, for murder committed in the perpetration of a robbery resulted in a verdict of guilty of murder in the first degree without capital punishment and a sentence of imprisonment for life, he appealed. The defendant contends that the evidence was insufficient to permit a conviction of first degree murder, but the principal issue raised by the appeal is whether a purported admission by silence should have been admitted as evidence against the defendant.

On the evening of August 30, 1960, the teen-aged defendant left his home, picked up a toy pistol at the home of a friend and later met Charles (Shotgun) Davis, the codefendant, who was also a minor. Together they proceeded to call on another friend, and all three of them went to a carnival on Leeds Street in Baltimore and remained there until nearly midnight. The two defendants left the carnival to go home with a group of other boys. On the way, another acquaintance driving an automobile stopped and talked to the defendant Ewell. All of the other boys, except the codefendant Davis, went on homeward.

A few minutes later, as Ewell and Davis were walking over the bridge at Frederick Avenue and Hilton Street, they saw a man walking alone toward the bridge. Ewell claimed that it was Davis who proposed robbing the man. He further claimed that he, Ewell, refused to participate in the robbery; and that Davis, after demanding the toy pistol and getting it, turned and walked back in the direction the victim was proceeding, while he, Ewell, walked on up Frederick Avenue and turned into Hilton Street. Shortly thereafter, Davis came running around the corner, and told Ewell to run along with him, which he did. Later Davis gave Ewell ten dollars out of the wallet of the victim and returned the toy pistol to him.

The defendants were tried separately. Davis was tried, convicted and sentenced to life imprisonment first. During the course of the trial of Ewell, Sterling Butcher, one of the teen-aged boys who had been at the carnival with the defendants but had parted company with them in the vicinity of the bridge, testified that he saw Davis and Ewell soon after standing at a distance of about ten or fifteen yards from the witness "in the alley behind Hilton Street, right off of Massachusetts Avenue." Butcher called to Ewell and Davis and "asked them what they were doing." One of them—or another friend, Donald Hall, who was walking down the alley toward them, replied that "we just yoked a man." The witness could not say who had responded to his inquiry. Later in the trial, Ewell, having taken the stand in his own behalf, testified on cross-examination by the State that he had not seen Butcher in the alley, that no question had been asked and that neither he nor the codefendant had replied to a question.

At the point in the direct examination of the witness Butcher when the prosecuting attorney had asked what was said in reply to the inquiry, counsel for the defendant interposed an objection on the ground that the response would be hearsay, but the trial court received the testimony of the witness subject to exception. Counsel renewed the objection when the direct examination was concluded, but at that time the court stated it would rule on the matter later and advised counsel that he could cross-examine without waiving his ob-

jection. The objection (which the court treated as a motion to strike) was not made again until the close of all the evidence offered by the State. On that occasion the court overruled the motion without comment. In its charge to the jury, the court instructed generally as to the law of the case, but it did not, nor was it requested to, instruct the jury with respect to what purported to be a tacit admission by the defendant that he had participated in the yoking of the victim.

It is generally held that if a statement is made by another person in the presence of a party to the action, be it civil or criminal, containing assertions of facts which if untrue the party would under all the circumstances naturally be expected to deny, his failure to speak is circumstantial evidence that he believes the statements to be true, and his conduct is thus receivable against him as an admission of such belief. *Kelly v. State,* 151 Md. 87; *Wolfe v. Brown,* 173 Md. 103; *Barber v. State,* 191 Md. 555; *Zink v. Zink,* 215 Md. 197. See also 2 *Jones on Evidence* (5th ed.), Sec. 388; *McCormick, Evidence,* Sec. 247; 2 *Underhill's Criminal Evidence* (5th ed.), Secs. 378-380; 2 *Wharton's Criminal Evidence* (12th ed.), Sec. 405; 4 *Wigmore, Evidence* (3d ed.), Sec. 1071.

In *Barber,* Judge Henderson, speaking for the Court, said: "It would seem that the question of admissibility should not depend upon the source of the statement, *i. e.,* whether from the person making it or from one who was present when it was made. In either event, the significant fact is the conduct of the accused in the face of accusation. Failure to deny the charge, under some circumstances, may permit an inference of an admission of guilt." *Id.* at 564-565.

*Zink v. Zink, supra,* points out that standing mute may evidence acquiescence in a statement uttered by another only "if the situation and circumstances are such that a dissent in ordinary experience would have been expressed if the statement * * * had not been correct." *Id.* at 202. If a failure to deny is more naturally explainable on some inference other than that of belief in the truth of the statement, the testimony as to the occurrence should not be received. The opinion continues: "If an admission by silence is to be received against the

silent party, it must be found (1) that the statement was actually made; (2) that the reaction of silence or evasion took place as claimed; (3) that the party heard and understood the statement; and (4) that under all the circumstances the party's conduct makes it probable that he believed the statement to be true." *Ibid.*

Because of the hearsay rule, failure to deny an incriminating statement is not admissible as direct evidence of the fact asserted, but it may be received as showing the reaction of the accused to the statement and from his reaction an inference of guilt may be drawn. The trial judge must determine, as a preliminary matter, whether the statement and the failure to rebut it occurred in an environment and in the presence of actors such that a reply might naturally have been expected. If he decides the testimony is admissible, then it is for the jury, under proper instructions from the court (that such evidence is to be received with caution, that it is not substantive evidence of the fact asserted and does not of itself show guilt and that it is but a circumstance which permits the drawing of an inference of guilt) to determine: (a) whether the accused was aware of the making of the statements; (b) whether under the circumstances a reply was to be naturally expected; and (c) whether the failure of the accused to reply showed an awareness, a consciousness of guilt. *Barber v. State, supra; People v. Simmons,* 172 P. 2d 18 (Cal.) ; *Camper v. State,* 216 S. W. 2d 18 (Tenn.). See also Annotations, 115 A. L. R. 1510, 80 A. L. R. 1235.

In the case before us the statement that "we just yoked a man" could have been made by Davis or by the defendant Ewell or, as the testimony makes less likely, by Hall as he came towards them. (Hall was a brother of one of the boys who had been in the group at the carnival with Ewell and Davis, but he appeared on the scene for the first time in the alley.) We shall assume, as did the trial court in admitting the challenged testimony, that the response to Butcher's inquiry was made by Davis or Hall.

We find it apparent that the jury reasonably could have found that Ewell heard and understood both the assertion that "we just yoked a man" and that the pronoun "we" included

him, as well as that he remained silent although fully free to speak.

The matter turns on whether the trial judge erred in the judgment he necessarily made in permitting the evidence to go to the jury—that under the circumstances it would have been natural for Ewell to make a reply if he had not agreed with the statement. In this connection, it is to be noted that the inquiry was made by a friend from whom Ewell had recently parted, there were no strangers present, and nothing to put Ewell in fear or to inhibit his speaking. When one is accused of a crime he has not committed, it is natural to deny it—even one to whom the commission of crime had become an accustomed thing might find it natural to deny to friends, as a departure from the ordinary, the commission of a particular crime. Someone thought it appropriate to answer Butcher's question, and it would seem to have been just as appropriate for Ewell to clarify its application to him. The texts and the cases point out some of the things which make a failure to deny an accusation of crime more natural than to deny it. *McCormick, op. cit.,* sets out examples at pages 528-529, such as failure to deny when it would be a breach of decorum, as in court; when one is suffering from shock or injury; or when failure is prompted by advice of counsel to remain silent. *Barber v. State, supra,* noted at p. 565 of 191 Md. that in some States if the accused is under arrest when the statement is made, a failure to deny it is inadmissible as a matter of law, and that "if it appears that the failure to deny is attributable to fear, the advice of counsel, or the desire to exercise an assumed or asserted right against self-incrimination, it has been held that no inference of guilt can properly be drawn." *2 Jones on Evidence* (5th ed.), Sec. 388, says that if by reason of "injury, shock, deafness, intoxication or other condition the statements were not understood," they should not be received. None of the factors or conditions which have been mentioned as properly requiring exclusion of the statement and the failure to reply to it were present here, and no other prominent or decisive reason why a reply would not naturally have been made has been shown. We think a jury of reasonable men could have found that it would have been natural for Ewell to

reply under the circumstances, and, this being so, we cannot find error in the submission of the testimony complained of to the jury. *Cf. Oliver v. State,* 348 S. W. 2d 325 (Tenn.).

Judge Niles did not instruct as to the nature of the testimony and the effect to be given to it by the jury, but since there was no exception taken to the charge the omission will not be considered on appeal Md. Rule 756 g (formerly Md. Rule 739 g) ; see *Canter v. State,* 220 Md. 615, 617, and *Reynolds v. State,* 219 Md. 319, 324-325.

We find the facts proven by the State as to Ewell's owning the pistol, his being with Davis (who Ewell says committed the crime), both immediately before and immediately after its commission, Ewell's sharing in the fruits of the crime and his efforts to hide the pistol and to change his appearance after the crime, considered with his failure to deny that he had yoked a man, constituted evidence sufficient to permit the jury properly to find him guilty of the crime charged.

*Judgment affirmed.*

HORNEY, J., filed the following dissenting opinion, in which PRESCOTT and MARBURY, JJ., concurred.

The majority, in assuming that the assertion "we just yoked a man" was made by a person other than the defendant, treated the statement as an implied admission and held in effect that the lower court did not err when it admitted the purported admission in evidence over the objection of the defendant without cautioning the jury either at that time or in its instructions as to the peculiar nature of the testimony and the effect the jury was permitted to give to it. To me, this action on the part of the lower court constituted reversible error and should not be countenanced.

We are in substantial agreement that an implied admission is not substantive evidence of the fact asserted and that the basis for its admissibility lies in the probable truthfulness of the statement which is inferrable from the failure to speak. We further agree that the admissibility of a purported admission presents a preliminary question for the court and an ultimate question for the jury as to whether the accused heard

the incriminating statement and understood that he was being accused of complicity in the crime, if, after the preliminary inquiry, the court determines that the statement is admissible. *Barber v. State,* 191 Md. 555, 62 A. 2d 616 (1948); McCormick, *Evidence,* § 247; 2 Wharton, *Criminal Evidence* (12th ed.), §§ 660, 662. And, of course, should the statement and conduct of the accused be properly admitted as evidence, the jury has a right to consider the same testimony (as did the court in deciding whether it was admissible) in determining the weight to be given to it, and the inferences to be drawn from the silence or conduct of the accused. But because there is a very real danger (unless the jury is specifically cautioned and it was not in this case) that the jury might give credence to the statement itself rather than to the inference deducible from silence, it is my considered opinion that, in addition to preliminarily determining whether the incriminating statement was actually made, whether the defendant heard and understood the statement and comprehended its meaning and whether he was physically able and at liberty to speak, the lower court (if all of the aforegoing requirements are met) should then determine whether the statement was made under such circumstances as naturally called for a denial or reply before admitting the purported admission as evidence. See Note, *Evidence-Admissibility of Adoptive Admissions,* 29 N. Y. U. Law Rev. 1266; McCormick, *op. cit., supra.* And cf. *Commonwealth v. Kenney,* 53 Mass. (12 Metc.) 235 (1847), a leading case on the subject.

In the instant case, where it was not shown who made the statement, the assertion could have been made by the defendant, the codefendant or by some other person other than the defendant. But if it is assumed, as it was by the lower court and the majority of this Court, that the response "we just yoked a man" to the inquiry as to "what they were doing," was not made by the defendant, there was some evidence tending to show (though the defendant testified that there was neither an inquiry nor a response) that the statement was actually made. It also appears that a reasonable inference could be drawn from the evidence that the defendant could have heard and understood the assertion and compre-

hended its significance. And the evidence was such as to permit a further inference that the defendant remained silent without compulsion. But it seems clear to me that the circumstances when considered as a whole did not naturally call for a reply by the defendant. For here—where the statement was made in a place (a practically deserted alley) where and at a time (in the middle of the night) when only the defendant and the codefendant and their teen-age friends and acquaintances were present—it is evident that whatever may have motivated the response to the question asked, the surrounding circumstances were not such as to require the accused to either deny or object to the incriminating statement. Instead, it appears that the assertion was more likely to have been the boast of a criminal-minded teen-ager rather than an accusation that the defendant had participated in the yoking of the victim. In determining whether a reply is required, the test generally applied is whether a reasonable person similarly situated would have thought it necessary to deny the statement. *People v. Kozlowski,* 13 N. E. 2d 174 (Ill. 1938) ; 20 Am. Jur., *Evidence,* § 570 ; Annotations, 80 A. L. R. 1235, 1250, and 115 A. L. R. 2d 1510, 1516. There was no compelling reason here requiring a denial of the statement by the defendant.

Inasmuch as the lower court, despite the repeated objections to the admissibility of the statement, neglected to explain to the jury the nature and effect of what the State characterized as "a most devastating admission," it is my opinion that the judgment, instead of being affirmed, should be reversed and the case remanded for a new trial.

Judges Prescott and Marbury authorize me to say that they concur with the views herein expressed.