709 A.2d 1305

**Philip KEY–EL**

v.

**STATE of Maryland.**

**No. 5, Sept. Term, 1997.**

Court of Appeals of Maryland.

May 26, 1998.

812

Martha Weisheit, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), of Baltimore, for Petitioner.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), of Baltimore, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW and RAKER, JJ., and MARVIN H. SMITH and ROBERT L. KARWACKI, Judges (retired), Specially Assigned.

ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

■   We issued a writ of certiorari in this criminal case to determine whether the trial court properly admitted rebuttal evidence regarding the defendant's pre-arrest silence when his wife, in the presence of a police officer, accused the defendant of battering her.  We shall hold that the court did not abuse its discretion in admitting that evidence as a tacit admission by the defendant under the circumstances present in the instant case.

## I.

On August 19, 1994, at approximately 10 p.m. a telephone call was placed to the emergency telephone number, 911, but the caller hung up before speaking with the operator.  Nevertheless, the operator was able to determine from her terminal the name of the subscriber to the telephone used for the call and that telephone's number.  The operator then called that number.  A woman answered and the operator heard a man's voice yelling in the background.  Concerned by what she heard, the operator dispatched both the police and an ambulance to the address where the woman to whom she had spoken was located.

Officer John Johnson of the Baltimore County Police Department was the first to arrive.  Philip Key–El, the Petitioner, answered Officer Johnson's knock on his door.  The officer "asked if anybody had called 911 from this location [and] if there was a problem."  Petitioner answered "no", but a woman in the next room, later identified as Petitioner's wife, answered "yes".  The officer walked into the room where Mrs. Key–El was standing.  She was crying and her left eye was bruised and swollen.  With the Petitioner standing an "arm's length away", Officer Johnson asked Mrs. Key–El what had happened to her, and she responded that she had gotten into an argument with her husband and that he pulled her by her hair and punched her in the face.  Despite the fact that she spoke with enough volume for the Petitioner to hear her

statement, "he didn't say anything at all" according to Officer Johnson. Subsequently, Officer Johnson decided to arrest the Petitioner.

At trial, however, Mrs. Key–El changed her story. Testifying for the defense, she denied that Petitioner had struck her but blamed her injury of August 19, 1994, on a girlfriend of her husband's. Mrs. Key–El testified that when she returned to their apartment that evening, she found her husband with a girlfriend. She claimed that she and the unidentified girlfriend argued and then exchanged blows. She further stated that after the Petitioner was successful in getting his friend out of the apartment, she continued to argue with him. According to Mrs. Key–El, when Petitioner refused to identify his girlfriend and explain what she was doing in their apartment, she called the police and accused Petitioner of battering her. She further testified that she falsely accused her husband that night in order to hurt Petitioner "the way that he hurt me."

On cross examination, Mrs. Key–El admitted that after August 19, 1994, she had received a letter from the Office of the State's Attorney requesting that she complete a victim impact statement. When Petitioner saw the letter, he became angry and threw it away. She testified that later, however, she wrote a letter to the person who had corresponded with her from the State's Attorney's office in which she repeated her accusation that Petitioner struck her in the eye with his fist on August 19, 1994.

The State recalled Officer Johnson as a rebuttal witness. The following testimony was offered and admitted:

"Q. When you asked Mrs. Key–El what happened to her and she told you that her husband struck her where was the defendant standing then?

A. When she said that he struck her?

Q. Yes.

A. She was standing in the kitchen.

Q. She was in the kitchen; where was he?

A. He was standing behind me in the dining room.

Q. Again approximately how many feet away from you?

A. From me? Maybe three or four.

Q. Did you have any difficulty hearing what she said?

A. No.

Q. Was it said with enough volume that a person in the position of the defendant would have been able to hear that statement?

A. Yes.

MR. KATZ: Objection.

THE COURT: Overruled.

A. Yes.

Q. When she said my husband hit me did the defendant deny that statement?

MR. KATZ: Objection. May we approach?

THE COURT: Anything new than what we already argued?

MR. KATZ: No, Your Honor.

THE COURT: Objection is overruled but noted for the record.

A. He didn't say anything at all."

The Petitioner was found guilty by a jury in the Circuit Court for Baltimore County of battery and was sentenced to five years imprisonment consecutive to a sentence which he was already serving for an unrelated crime. After the Court of Special Appeals affirmed that judgment, we issued our writ of certiorari on the petition of Mr. Key–El.

Petitioner contends that evidence of his pre-arrest silence in the presence of a police officer should be *per se* inadmissable under the law of evidence of this State; and if not, then this evidence when admitted on the issue of guilt or innocence impermissibly infringes upon his right against compelled self-incrimination protected by the Fifth Amendment to the U.S.

Constitution and Article 22 of our Declaration of Rights. We shall address those contentions separately.

## II.

Maryland has long recognized so called "tacit admissions" by a party-opponent in both civil and criminal actions as an exception to the hearsay rule under common law. *See Henry v. State,* 324 Md. 204, 242, 596 A.2d 1024 (1991); *Briggeman v. Albert,* 322 Md. 133, 138, 586 A.2d 15 (1991); *Miller v. State,* 231 Md. 215, 218, 189 A.2d 635 (1963); *Ewell v. State,* 228 Md. 615, 618, 180 A.2d 857 (1962); *Secor v. Brown,* 221 Md. 119, 124, 156 A.2d 225 (1959); *Zink v. Zink,* 215 Md. 197, 202–03, 137 A.2d 139 (1957); *Barber v. State,* 191 Md. 555, 564–65, 62 A.2d 616 (1948); *Kelly v. State,* 151 Md. 87, 97, 133 A. 899 (1926); *Brandon v. Molesworth,* 104 Md.App. 167, 198, 655 A.2d 1292 (1995); *Burgess v. State,* 89 Md.App. 522, 536–37, 598 A.2d 830 (1991); *Wills v. State,* 82 Md.App. 669, 677, 573 A.2d 80 (1990); *Duncan v. State,* 64 Md.App. 45, 51, 494 A.2d 235 (1985); *Ellison v. State,* 56 Md.App. 567, 582, 468 A.2d 413 (1983); *Williams v. State,* 4 Md.App. 342, 348, 242 A.2d 813 (1968). *Barnes v. State,* 1 Md.App. 123, 125, 227 A.2d 763 (1967). This common law was codified as Maryland Rule 5–803(a)(2) which took effect on July 1, 1994. In our order adopting the rules of evidence as Title 5 of the Maryland Rules, we provided:

"the Rules in Title 5 and the other rules changes hereby adopted by this Court shall govern the courts of this State and all parties and their attorneys in all actions and proceedings therein, except as otherwise provided in such Rules; they shall take effect July 1, 1994 and shall apply in all trials and hearings commenced on or after that date; provided, however, that (1) any trial or hearing commenced prior to July 1, 1994 shall continue to be governed by the law and Rules in effect on June 30, 1994, and (2) no evidence shall be admitted against a defendant in a criminal action in proof of a crime committed prior to July 1, 1994, unless that evidence would have been admissible under the law and Rules in effect on June 30, 1994...." *See Graves v. State,*

334 Md. 30, 36–7 n. 2, 637 A.2d 1197, 1201 n. 2 (1994).[1]

We have observed that "[a] tacit admission occurs when one remains silent in the face of accusations that, if untrue, would naturally rouse the accused to speak in his or her defense." *Henry v. State,* 324 Md. at 241, 596 A.2d at 1043. We also explained in *Henry:*

"In order for the other's statement to be considered the party's tacit admission, the following prerequisite must be satisfied: (1) the party heard and understood the other person's statement; (2) at the time, the party had an opportunity to respond; (3) under the circumstances, a reasonable person in the party's position, who disagreed with the statement, would have voiced that disagreement. The party must have had first-hand knowledge of the matter addressed in the statement."

*Id.* at 241–42, 596 A.2d 1024 (*quoting* Lynn McLain, MARYLAND EVIDENCE, *see* 801(4).3 at 312–13 (1987)).

Petitioner does not assert that he did not hear or understand his wife's accusation that he pulled her hair and struck her or that he did not have the opportunity to respond. Rather, he contends that whenever a police officer is present, pre-arrest silence of a person who is the subject of an incriminating statement is at best ambiguous because of the wide spread knowledge of the Fifth Amendment right to remain silent. Alternatively, he asserts that even if we should hold that no *per se* rule be adopted, we should conclude that under the circumstances of the instant case the trial judge erred in admitting the evidence because his silence was too ambiguous such that its slight probative value was clearly outweighed by possible prejudice to him.

When considering the limits placed upon the use of a defendant's silence as evidence, the Supreme Court of the United States, this Court and the Court of Special Appeals

---

**1.** The petitioner was tried on February 6 and 7, 1995, for the offense giving rise to this case which occurred on August 19, 1994. Consequently, the admission of the evidence at issue in the instant case is governed by Md. Rule 5–803(a)(2).

have distinguished between pre-arrest and post-arrest silence. *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (The Court held that the use of pre-arrest silence of the defendant to impeach his testimony at trial did not improperly burden his Fifth Amendment right to remain silent nor deny him the fundamental fairness guaranteed by the due process clause of the Fourteenth Amendment); *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) (Federal due process guarantees violated by using defendant's silence for impeachment purposes where defendant had been arrested and advised of his right to remain silent); *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965) (Comment by prosecution on defendant's election not to testify at trial and instruction that such election is evidence of guilt violated Fifth Amendment); *Williams v. State*, 4 Md.App. 342, 242 A.2d 813 (1968) (Pre-arrest silence admitted as evidence of a tacit admission when defendant remained silent in the face of an accusation by a third party in the presence of a police officer); *Younie v. State*, 272 Md. 233, 244–45, 322 A.2d 211 (1974) (Where there is custodial interrogation, silence in face of accusations is presumed to be exercise of privilege against compelled self incrimination); *Zemo v. State*, 101 Md.App. 303, 316, 646 A.2d 1050 (1994) (Error to advise jury that defendant remained silent after he was advised of his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Wills v. State*, 82 Md.App. 669, 677, 573 A.2d 80 (1990) (Improper to admit evidence of defendant's post-arrest, pre-Miranda advice silence for impeachment purposes because potential for prejudice outweighs probative value)).

The uncontradicted evidence in the instant case shows that at the time of Petitioner's silence from which his tacit admission was inferred, he had every opportunity to respond to his wife's accusation, he was not in custody, he was not being interrogated by Officer Johnson, he had not been arrested and he had not been told of his *Miranda* right to remain silent. This is a text-book example of the wisdom of judging the effect of pre-arrest silence on a case by case basis. As a

threshold question for the trial court, the admissibility of such silence should depend on an evaluation of the required prerequisites for the use of the tacit admission that have been established over the years by this Court, *i.e.,* did the defendant hear and understand the other party's statement, did the defendant have the opportunity to respond; and under the circumstances would a reasonable person in the defendant's position, who disagreed with the statement, have voiced that disagreement. These same factors would then be evaluated by the jury and the tacit admission given the weight that the jury believes it to be worth. Where such an evaluation by the court discloses that the police officer's presence together with the other circumstances demonstrate that a reasonable person in the defendant's position would not be expected to deny or explain the accusation, then the defendant's silence would be excluded from evidence.

The Court of Special Appeals has approved the admission of a tacit admission of a defendant where his pre-arrest silence in the face of an accusation by a third party occurred in the presence of a police officer. *Williams v. State,* 4 Md.App. 342, 242 A.2d 813 (1968). In that case the defendant and another were standing on a public sidewalk showing garments which they carried in shopping bags to a woman. A police officer approached them and asked what was going on. The woman said that she was going to buy one of the garments from the defendant. The defendant remained silent. When the defendant admitted that he had no peddler's license, he was arrested. At his trial, defendant asserted that he did not have to say anything when the woman made the statement accusing him of selling goods on the street. Emphasizing that the defendant was not in custody, the court held that his silence as a tacit admission that he was engaged in selling goods was substantive evidence of his guilt of peddling without a license.

The appellate courts of our sister states have not agreed on the issue of whether pre-arrest silence in response to an accusation can ever give rise to a tacit admission by the accused where a police officer is present. In *State v. Helgeson,* 303 N.W.2d 342 (N.D., 1981) and *Commonwealth v.*

*Ferrara,* 31 Mass.App.Ct. 648, 582 N.E.2d 961 (1991) the courts upheld the admission of such evidence. In *People v. DeGeorge,* 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11 (1989), and *Commonwealth v. Dravecz,* 424 Pa. 582, 227 A.2d 904 (1967) the use of the accused's tacit admission was held to be reversible error. The rule in Michigan is not clear. Cf. *People v. Cetlinski,* 435 Mich. 742, 460 N.W.2d 534 (1990); *People v. Bobo,* 390 Mich. 355, 212 N.W.2d 190 (1973), and *People v. Schollaert,* 194 Mich.App. 158, 486 N.W.2d 312 (1992).

Furthermore, we reject Petitioner's alternative argument under Maryland evidence law that we should hold that the trial court abused its discretion in admitting the evidence as a tacit admission. We noted earlier that of all of the threshold factors the court was required to consider in determining admissibility, the only factor contested was whether the Petitioner would have been expected to deny his wife's accusation made in the presence of a police officer. Considering the fact that Petitioner was in his own home at the time that his wife made what she later testified was a false accusation of battery against him, the accusation could very well be construed as that kind of statement which naturally should have provoked an immediate denial from the Petitioner. The fact that Petitioner remained silent was possibly highly probative in the eyes of the jury when reaching a conclusion as to whether or not the story that Pamela Key–El told at trial was credible. The trial court did not abuse its discretion in allowing the jury to determine the weight to be accorded the tacit admission.

## III.

Finally, the Petitioner contends that the use of his pre-arrest silence as a tacit admission impermissibly burdens his right against compelled self-incrimination protected by the Fifth Amendment.[2] The Supreme Court of the United States

---

2. Article 22 of our Declaration of Rights also protects against compelled self-incrimination. It has generally been held to be in *pari materia* with the Fifth Amendment, *Hof v. State,* 337 Md. 581, 586 n. 3, 655 A.2d 370

has never decided the question presented to us in the instant case, but the Court has considered evidence of an accused's silence in other situations which provides assistance in the resolution of the issue.

In *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) the Court held that the Fifth Amendment forbids either comment by the prosecutor on the accused's failure to testify at his trial or instructions by the court that such silence is evidence of guilt. Nevertheless, in *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Court declined to extend its holding in *Griffin* to prevent a prosecutor from referring to the defendant's silence at trial where defense counsel argued in his closing argument that the defendant had not been allowed by the Government to give his side of the story. The Court explained in *Robinson:*

> "The broad dicta in *Griffin* to the effect that the Fifth Amendment 'forbids ... comment by the prosecution on the accused's silence,' ... must be taken in the light of the facts of that case. It is one thing to hold, as we did in *Griffin*, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence. There may be some 'cost' to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one."

*Id.* 485 U.S. at 33–4, 108 S.Ct. at 869–70, 99 L.Ed.2d. at 32.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court considered whether the prosecution could permissibly use the defendant's silence after he had received his *Miranda* warnings at the time of his arrest in cross examination of the defendant about his exculpatory

---

(1995) and the Petitioner makes no argument that the issue in the case *sub judice* should be resolved any differently under Art. 22 of the Declaration of Rights.

story, told for the first time at trial. The Court held that such use of post-arrest and *Miranda* warnings silence was fundamentally unfair and prohibited by the Due Process Clause of the Fourteenth Amendment. The Court reasoned:

"The warnings mandated by that [*Miranda*] case, as a prophylactic means of safeguarding Fifth Amendment rights, see *Michigan v. Tucker*, 417 U.S. 433, 443–444 [94 S.Ct. 2357, 2363–2364, 41 L.Ed.2d 182] (1974), require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See *United States v. Hale* [422 U.S. 171], 177 [95 S.Ct. 2133, 2137, 45 L.Ed.2d 99 (1975)]. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who received the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (Footnote omitted).

Nevertheless, in *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) the Court held that the use of pre-arrest silence of the defendant to impeach his testimony at trial did not improperly burden his Fifth Amendment right to remain silent nor deny him the fundamental fairness guaranteed by the due process clause of the Fourteenth Amendment. Concluding that there was no Fifth Amendment violation the Court reasoned:

"It can be argued that a person facing arrest will not remain silent if his failure to speak later can be used to impeach him. But the Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional

rights.' " ... The " 'threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.' "

447 U.S. at 236, 100 S.Ct. at 2128, 65 L.Ed.2d at 93. And in explaining why it held that there was no breach of Fourteenth Amendment due process, the Court said:

> "In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case. We hold that impeachment by use of prearrest silence does not violate the Fourteenth Amendment."

*Id.* 447 U.S. at 240, 100 S.Ct. at 2130, 65 L.Ed.2d at 96.[3] Also in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Supreme Court ruled that a State court did not deny an accused due process in permitting cross-examination of him as to his post-arrest silence in the absence of *Miranda* warnings or similar assurances as to his right to remain silent.

The federal circuit courts have not agreed on the issue of permissible use of pre-arrest, pre-*Miranda* warnings silence as substantive evidence against the accused. It was not permitted in *United States v. Burson,* 952 F.2d 1196, 1200–01 (10th Cir.1991), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992); *Coppola v. Powell,* 878 F.2d 1562, 1567–68 (1st. Cir.), *cert. denied,* 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383 (1989); and *United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1018 (7th Cir.1987). The Seventh Circuit has since limited its holding in *Lane* and permitted comment by the prosecutor upon an accused's pre-arrest silence when the accused selectively responded to an investigator's questions. The Eleventh Circuit, *United States v. Rivera,* 944 F.2d 1563,

---

**3.** Petitioner in the present case only asserts that the use of his pre-arrest *pre-Miranda* warnings silence as substantive evidence from which a tacit admission could be inferred impermissibly burdened his Fifth Amendment right against compelled self-incrimination. No fundamental unfairness resulting in a denial of due process under the Fourteenth Amendment is claimed.

1568 (11th Cir.1991) and the Fifth Circuit, *United States v. Zanabria,* 74 F.3d 590, 593 (5th Cir.1996) have permitted prosecutorial comment upon accused's pre-arrest silence.

■ When silence of a defendant in response to an incriminatory accusation is used by the prosecution as the basis for an inference of a tacit admission, the defendant can not validly assert that the privilege against *compelled* self-incrimination has been violated. As Justice Stevens wrote in his concurring opinion in *Jenkins v. Anderson:*

> "When a citizen is under no official compulsion whatever, whether to speak or to remain silent, I see no reason why his voluntary decision to do one or the other should raise any issue under the Fifth Amendment.[ ] For in determining whether the privilege is applicable, the question is whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent. A different view ignores the clear words of the Fifth Amendment.... Consequently, I would simply hold that the admissibility of petitioner's failure to come forward with the excuse of self-defense shortly after the stabbing raised a routine evidentiary question that turns on the probative significance of that evidence and presented no issue under the Federal Constitution."

447 U.S. at 243–44, 100 S.Ct. at 2132, 65 L.Ed.2d at 98. *See also Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) ("The sole concern of the Fifth Amendment on which *Miranda* was based, is government coercion"); *Illinois v. Perkins,* 496 U.S. 292, 297, 110 S.Ct. 2394 [2397], 110 L.Ed.2d 243 (1990) (Rationale behind *Miranda* is that danger of coercion results from "interaction of custody and official interrogation"); *United States v. Robinson,* 485 U.S. at 31–32, 108 S.Ct. at 868, 99 L.Ed.2d at 31 (declining to give *Griffin* "broad reading" because that "would be quite inconsistent with the Fifth Amendment, which protects against compulsory self-incrimination"). Petitioner in the instant case was not in custody and was not being interrogated when he remained silent despite his wife's accusation.

Although a police officer was present, Petitioner was under no official compulsion to speak or remain silent. His silence gave rise to a permissible inference. The use of it in evidence did not burden his Fifth Amendment privilege.

### JUDGMENT AFFIRMED WITH COSTS.

Dissenting opinion by RAKER, J., in which BELL, C.J., and ELDRIDGE, J., join.

RAKER, Judge, dissenting.

We granted certiorari to consider the following question:

Should a defendant's silence in the face of incriminating accusations be admissible against him as substantive evidence of guilt when those accusations were made prior to his arrest but in the presence of the police?

The Court of Special Appeals held that as a matter of Maryland evidence law, evidence of Petitioner's silence falls within an exception to the hearsay rule and was admissible as a tacit admission by silence. The majority of this Court agrees, and affirms the intermediate appellate court. Both courts concluded that Petitioner's silence was highly probative in rendering Pamela Key–El's in-court testimony unworthy of belief and would aid the jury "when reaching a conclusion as to whether or not the story that Pamela Key–El told at trial was credible." I disagree, and would reverse the judgment of the Court of Special Appeals on the ground that a tacit admission in the presence of police officers is too ambiguous to have any probative value and ordinarily should not be admissible in evidence as substantive evidence of guilt.[1]

---

1. It is important to keep in mind that the issue presented in this case involves evidence of pre-arrest silence when used as substantive evidence, i.e., when used to imply that the defendant is guilty, and not when used to impeach a defendant's testimony if he testifies in his own defense.

   In this case, Petitioner did not testify. Evidence of Petitioner's pre-arrest silence was introduced in rebuttal, in apparent response to Mrs. Key–El's testimony that her husband had not caused her injuries. The majority concludes that Petitioner's silence was highly probative in rendering Mrs. Key–El's in-court testimony unworthy of belief and

The tacit admission rule is generally accepted as an exception to the hearsay rule. If a statement is made in a party's presence, containing assertions of facts which, if untrue, the party would under the circumstances naturally be expected to deny, then the failure to speak has traditionally been admissible in evidence against the party as an admission. *Ewell v. State*, 228 Md. 615, 618, 180 A.2d 857, 859–60 (1962); *see also* McCormick, On Evidence § 160, at 648–53 (J. Strong, ed., 4th ed. 1992); Lynn McLain, Maryland Evidence § 801(4).3, at 312–13 (1987); 4 Wigmore, Evidence § 1071, at 102–06 (Chadbourn rev. 1972).

In Maryland, certain prerequisites must be satisfied before this kind of evidence is admitted. The foundation for admitting a tacit admission generally requires proof of the following: (1) that the statement was actually made, (2) that the defendant must have heard and understood the accusatory statement, (3) that at that time, the defendant had an opportunity to deny the accusatory statement, and (4) that under the circumstances calling for a reply, the defendant remained silent. *Zink v. Zink*, 215 Md. 197, 202, 137 A.2d 139, 142–43 (1957). A tacit admission must be made "in an environment and in the presence of actors such that a reply might naturally have been expected." *Ewell*, 228 Md. at 619, 180 A.2d at 860; *see also Secor v. Brown*, 221 Md. 119, 123, 156 A.2d 225, 227 (1959); *Zink*, 215 Md. at 202, 137 A.2d at 142; *Barber v. State*,

---

would aid the jury "when reaching a conclusion as to whether or not the story that Pamela Key–El told at trial was credible." In actuality, the evidence was used as substantive evidence of Petitioner's guilt. Although the prosecutor argued before the trial court that the evidence was admissible both as a tacit admission and as "critical impeachment evidence" that "bears on the credibility of the story told by Mrs. Key–El," in closing he argued to the jury that:

> the reason [Key–El] remained silent is because he struck her.... A person in the position of the defendant, truly innocent, who did not do these things would have been expected to protest.... The defendant does not do that. He doesn't do that because he was, in fact, the person who struck her.

Since evidence of Petitioner's silence was used as substantive evidence, and that is the question in the certiorari petition, the majority should be concerned with whether the evidence was probative of Petitioner's guilt, not whether it bears on the credibility of Mrs. Key–El's testimony.

191 Md. 555, 565, 62 A.2d 616, 620 (1948). A tacit admission may be used against a defendant "only when no other explanation is equally consistent with silence." *Zink*, 215 Md. at 202, 137 A.2d at 142; *see also* McCORMICK, *supra*, § 160, at 649–50; WIGMORE, *supra*, § 1071, at 103.[2] "If a failure to deny may be more naturally explainable on some inference other than that of belief in the truth of the statement, the testimony as to the occurrence should not be received." *Ewell*, 228 Md. at 618, 180 A.2d at 859.

The premise underlying the tacit admission rule is that silence in the face of an accusation is probative of guilt, since an innocent individual who is falsely accused will deny the accusation. Courts and commentators have often suggested that such evidence be received with caution, "an admonition that is especially appropriate in criminal cases." McCORMICK, ON EVIDENCE § 270, at 800 (E. Cleary, ed., 3d ed. 1984); *see also*, D. Todd McLeroy, *Tacit Admissions*, 21 CUMB.L.REV. 151, 154 (1990); *State v. Garcia*, 83 N.J.Super. 345, 199 A.2d 860, 865 (1964). Criticism of the tacit admission rule is not new. *See, e.g., Garcia*, 199 A.2d at 863–65; *see also People v. Todaro*, 256 Mich. 427, 240 N.W. 90, 93 (1932) (Weist, J., dissenting). Since the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), more courts are now questioning the premise of the rule and have begun to rethink and modify the tacit admission rule. *See* Charles W. Gamble, *The Tacit Admission Rule: Unreliable and Unconstitutional—A Doctrine Ripe For Abandonment*, 14 GA.L.REV. 27 (1979). Although *Miranda* addressed

---

**2.** Professor Wigmore observed that:

"Qui tacit consentire videtur," "silence gives consent," are ancient maxims, which have ever been taken to be unquestioned and have a larger scope than their application in the law of Evidence. But, like all maxims, they merely sum up a broad principle, and cannot serve, without decided qualification, as practical and precise rules.... The general principle of Relevancy tells us that the inference of assent may safely be made *only when no other explanation is equally consistent with silence.*

4 WIGMORE, EVIDENCE § 1071, at 102 (Chadbourn rev. 1972) (emphasis added).

the constitutional aspect of silence, the decision has had an impact on courts' evidentiary approach to the tacit admission problem. Judge Wilner, then Chief Judge of the Court of Special Appeals, and now a member of this Court, commented on the impact of the *Miranda* decision in his concurring opinion below. He wrote:

[I]t seems clear to me that anyone of average intelligence who has had even the slightest exposure to popular literature or television knows that incriminating statements made by an accused suspect may, unless otherwise excludible, be used against him or her in a subsequent criminal trial. Although the Supreme Court has required that the police give such a warning directly when engaging in custodial interrogations, the public at large, I expect, assumes that incriminating statements made at any time may come to haunt the accused.

I have no problem with the tacit admission rule where there is no one else present, other than the accuser and the suspect, or even when the other witnesses who may be present are not likely to be perceived by the suspect as a threat to him. When the accusation is made in the presence of law enforcement officers, however, silence is, at best, ambiguous. In the absence of evidence on the point, we really can do no more than speculate as to why the accused did not respond. There may be several plausible reasons for his or her silence other than acquiescence in the truth of the accusation.

The premise of the tacit admission rule has been questioned, and, in some cases, outright rejected, in part due to the recognition that silence is increasingly ambiguous now that people are aware of their right to remain silent. *See Ex parte Marek*, 556 So.2d 375, 382 (Ala.1989) (abolishing the tacit admission rule). Some state courts have concluded that because there are several reasons an individual may remain silent, pre-arrest silence in the presence of police officers does not have sufficient probative value to be admissible. *See, e.g., State v. Kelsey*, 201 N.W.2d 921, 925 (Iowa 1972) (recognizing the ambiguity of pre-arrest silence, the court proscribed the

use of tacit admissions against an accused in a criminal proceeding); *Commonwealth v. Dravecz*, 424 Pa. 582, 227 A.2d 904, 906–09 (1967) (proscribing the applicability of the tacit admission rule when defendant is in police custody or in the presence of a police officer); *State v. Daniels*, 18 Conn.App. 134, 556 A.2d 1040, 1046 (1989) (concluding that the presence of the police and the emotional state of the victim rendered defendant's choice to remain silent ambiguous).

Other courts have concluded, on constitutional grounds, that the prosecution is precluded from introducing evidence of a defendant's pre-arrest silence in response to any question from a police officer, or to any statement made in the presence of the police, to imply guilt. *See United States v. Burson*, 952 F.2d 1196, 1200–01 (10th Cir.1991) (concluding that defendant's non-custodial, pre-arrest silence was invocation of privilege against self-incrimination, and as such was inadmissible, regardless of whether he was advised of his privilege against self-incrimination), *cert. denied*, 503 U.S. 997, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992); *Coppola v. Powell*, 878 F.2d 1562, 1567–68 (1st Cir.) (holding that defendant's refusal to answer questions in a pre-arrest, pre-custodial context was an invocation of his privilege against self-incrimination and was inadmissible in case-in-chief as substantive evidence of guilt), *cert. denied*, 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383 (1989); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017–18 (7th Cir.1987) (holding that use of defendant's pre-arrest refusal to answer police questions as substantive evidence of guilt violated defendant's constitutional right to remain silent); *Commonwealth v. Cull*, 540 Pa. 161, 656 A.2d 476, 481, n. 5 (1995) (noting that tacit admission rule is inapplicable in criminal cases where defendant in police custody or in the presence of police officers because contrary policy would effectively vitiate defendant's constitutional right against self-incrimination); *State v. Villarreal*, 126 Ariz. 589, 617 P.2d 541, 542 (App.1980) (holding that defendant's pre-arrest, pre-Miranda "admission by silence" not admissible in state's case-in-chief when made to a police officer); *see also* Comment, *Should the Prosecution Be Allowed to Comment on a Defen-*

*dant's Pre–Arrest Silence in Its Case-in-Chief,* 29 LOY.U.CHI. L.J. 181 (1997).

The underlying premise that an innocent person objects when confronted with a baseless accusation was analyzed and rejected by the Supreme Court of Alabama. *Ex Parte Marek,* 556 So.2d at 381. The court said:

> That underlying premise, that an innocent person always objects when confronted with a baseless accusation, is inappropriately simple, because it does not account for the manifold motivations that an accused may have when, confronted with an accusation, he chooses to remain silent. Confronted with an accusation of a crime, the accused might well remain silent because he is angry, or frightened, or because he thinks he has the right to remain silent that the mass media have so well publicized. Furthermore, without that premise that silence in the face of an accusation means that the accused thinks he is guilty, the tacit admission rule cannot withstand scrutiny, because the observation that the accused remained silent could not necessarily lead to the inference that the accused knew that he was guilty; without the premise that silence in the face of accusation necessarily results from guilt, the tacit admission rule merely describes two concurrent events, accusation and silence, without giving the reason for the concurrence of the two events. Accordingly, neither logic nor common experience any longer supports the tacit admission rule, if, indeed, either ever supported it.

*Id.* at 381.[3]

The Supreme Court of Pennsylvania reasoned that the rule lacks a solid foundation, is founded on a wholly false premise,

---

3. In *Ex Parte Marek,* 556 So.2d 375 (Ala.1989), the Alabama Supreme Court went beyond a discussion of common law evidentiary grounds, and also addressed the possible constitutional implications of the substantive use of pre-arrest, pre-*Miranda* silence. Rejecting the distinction between the use of tacit admissions occurring after a person has been given *Miranda* warnings and those cases where the individual has not been given warnings, the Alabama court concluded that "the right to remain silent is effective for both of the accuseds, and, regardless of

and rests on a "spongey maxim" that silence gives consent. Justice Musmanno, writing for the court, examined the tacit admission rule and declared:

> This rule, which has become known as the tacit admission rule, is too broad, wide sweeping, and elusive for precise interpretation, particularly where a man's liberty and his good name are at stake. Who determines whether a statement is one which "naturally" calls for a denial? What is natural for one person may not be natural for another. There are persons possessed of such dignity and pride that they would treat with silent contempt a dishonest accusation. Are they to be punished for refusing to dignify with a denial what they regard as wholly false and reprehensible?

*Dravecz*, 227 A.2d at 906. Denouncing the rule, the court quoted Robert G. Ingersoll's funeral oration for Roscoe Conkling in which he said: " 'He was maligned, misrepresented and misunderstood, but he would not answer. He was as silent then as he is now—and his silence, better than any form of speech, refuted every charge.' " *Id.* at 906, n. 1. Noting that proverbs, maxims and axioms do not necessarily represent universal truths, the court recounted vigorous opponents to the proverb *Silence is Golden: "Closed lips hurt no one, speaking may; Speech is of time, silence is of eternity; For words divide and rend, but silence is most noble till the end; And silence like poultice comes to heal the blows of sound; Be silent and safe, silence never betrays you."* *Id.* at 907 (emphasis in the original). The court concluded that the tacit admission rule is "not rule by reason but by unrestrained babblement." *Id.* at 908.

New York has also decided that pre-arrest silence does not have sufficient probative value to be admissible in evidence as an admission of guilt, or, for that matter, for impeachment purposes. In *People v. DeGeorge*, 73 N.Y.2d 614, 543

---

whether the accused is advised of that right, the right nevertheless exists." *Id.* at 381. The court recognized that although the constitutional restraints of the Fifth Amendment may not apply to the use of pre-arrest silence, "the fundamental logical problems with the rule remain." *Id.*

N.Y.S.2d 11, 13, 541 N.E.2d 11, 13 (1989), the New York Court of Appeals held that pre-arrest silence in the presence of police officers is inadmissible because silence is the natural reaction of many people in the presence of law enforcement officers. The court observed:

> Silence in these circumstances is ambiguous because an innocent person may have many reasons for not speaking. Among those identified are a person's awareness that he is under no obligation to speak or to the natural caution that arises from his knowledge that anything he says might later be used against him at trial, a belief that efforts at exoneration would be futile under the circumstances, or because of explicit instructions not to speak from an attorney. Moreover, there are individuals who mistrust law enforcement officials and refuse to speak to them not because they are guilty of some crime, but rather because they are fearful of coming into contact with those whom they regard as antagonists. In most cases it is impossible to conclude that a failure to speak is more consistent with guilt than with innocence.
>
> Moreover, despite its lack of probative value the evidence undoubtedly affects a witness's credibility. Jurors, who may not be sensitive to the wide variety of alternative explanations for a defendant's pretrial silence, may assign much more weight to it than is warranted and thus the evidence may create a substantial risk of prejudice.

*Id.* (quotation marks and internal citations omitted).

In my view, silence in the presence of law enforcement is ambiguous, and its probative value minimal, because an innocent person may have many reasons for not speaking out. The chief reason is that today, following the commonly known *Miranda* decision, most people are aware that they are not required to speak, and they also know that anything they say might be used against them at a trial. As the Supreme Court recently noted, "[a]nd as for the possibility that the person under investigation may be unaware of his right to remain silent: In the modern age of frequently dramatized 'Miranda' warnings, that is implausible." *Brogan v. United States,* 522

U.S. ——, ——, 118 S.Ct. 805, 810, 139 L.Ed.2d 830 (1998). In addition, some citizens harbor a mistrust for police and may choose to avoid communication with them, even when it would be in their best interest to do so. *See Davis v. State,* 344 Md. 331, 350–53, 686 A.2d 1083, 1092–93 (1996) (Raker, J., concurring); *id.* at 353–58, 686 A.2d at 1093–96 (Eldridge, J., dissenting). Since an individual who is accused of a criminal act in front of a police officer may choose to remain silent based on a general awareness of the popularized right to remain silent, or even out of suspicion or mistrust of the police, silence in the presence of law enforcement officers is ambiguous. As the Alabama Supreme Court concluded, without the premise that silence in the face of an accusation necessarily results from guilt, the tacit admission rule merely describes two concurrent events, accusation and silence, without giving the reason for the concurrence of the two events. *Ex Parte Marek,* 556 So.2d at 381. Based on Maryland evidentiary grounds, the tacit admission rule should be inapplicable in the context of accusations made in the presence of law enforcement officers.[4]

Chief Judge BELL and Judge ELDRIDGE have authorized me to state that they join in the views expressed in this dissenting opinion.

---

**4.** Based on the well-settled principle that courts should not decide constitutional issues unnecessarily, I would not reach the constitutional question lurking in the bushes. *See Professional Nurses v. Dimensions Health Corp.,* 3?*ö Md. 132, 139, 695 A.2d 158, 161 (1997); *Middleman v. Md.–Nat. Comm.,* 232 Md. 285, 289, 192 A.2d 782, 782 (1963).